## State Mutual Life Assurance Co. *vs.* Cora I. Bessett *et al.*

JANUARY 18, 1918.

Present:   Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Insurance.   Change of Beneficiary.*

In a case where the insured had freedom of choice of beneficiary, where the policy of life insurance provided, "Every change (of beneficiary) must be made by written notice to the company at its home office accompanied by the policy, and will take effect only when endorsed on this policy by the company," and insured had executed a nomination paper for change of beneficiary which paper was in the possession of the local agent of insurer for the purpose of being returned to the home office for endorsement upon the policy, but insured died prior to the receipt of the paper by the home office, he had done all that was required of him to make the change effective.

*(2)   Insurance.   Change of Beneficiary.   Ministerial Acts.*

An insured may change a beneficiary under an insurance policy (having reserved the right to do so) by doing all that is required of him to effect the change or all that is possible for him to do although certain formal or ministerial acts of the officers of the insurer are not performed before the death of the insured.   The question in a particular case will be ordinarily as to whether the acts required but unperformed were essential parts of the contract or were ministerial and formal details.

Bill of Interpleader.

Baker, J.   This is an appeal by Jeremiah E. O'Connell and Robert Grieve as administrators with will annexed on the estate of William H. Crone, late of Providence, in this State, deceased, from a decree of the Superior Court entered July 7, 1917, in the above entitled suit.

The complainant, which is a corporation having its home office in Worcester in the Commonwealth of Massachusetts, issued a five year term policy for $10,000 on the life of said William H. Crone, dated September 22, 1913, payable to said Cora I. Bessett, as the "intended wife" of the insured. The policy authorized the insured to exchange it "for a life or endowment policy of like amount" and by it also the right was reserved and secured to "change and successively change the beneficiary" thereunder.

On April 22, 1916, the insured made application to the complainant for the conversion of the policy above referred to to an ordinary life policy and in place of Miss Bessett nominated his estate as beneficiary. The application for the change of policy and the nomination of the new beneficiary were left at the office of George H. Collett, the general agent in this State of the complainant, and were forwarded the same day to the home office in Worcester by Miss Christine Ludwig, cashier in the Providence office. The original policy which appears to have been in the possession of Miss Bessett at this time was delivered to Miss Ludwig on Monday, April 24, and the same day sent to the home office and under date of April 25 endorsement was made thereon by the company that the insured nominates his estate as beneficiary. Under date of April 28 the home office sent to Mr. Collett the life policy on Mr. Crone's life for $10,000, payable to the insured's "executors, administrators or assigns." This policy contained the same privilege that was in the term policy as to the change of beneficiary and was dated March 22, 1916.

There was testimony that on the morning of May 2, 1916, Mr. Crone signed one of the company's printed forms for the nomination of a beneficiary on which at that time in the space left for the name of the beneficiary was written in pencil, "C. S. Bess. Fian.," and that after signing he gave it to Mr. Collett to be filled out and then to be sent to the home office with the new policy in order to have Miss Bessett's name as beneficiary endorsed thereon by the company. There was testimony also that in place of the pencilled abbreviations on the nomination paper the words "fiancee, Cora I. Bessett" were typewritten and the paper completed before nine o'clock of the morning of May 3. On that day at about thirty minutes after nine in the forenoon, Mr. Crone died suddenly in his law office. Later in the day the policy of insurance and the new designation of Miss Bessett as beneficiary were sent by mail to the home office and were there received early on May 4 and under that date the

insuring company endorsed on the policy in the usual form that the insured under date of May 2 had nominated "his fiancee, Cora I. Bessett as beneficiary," the officers of the company in Worcester not then having heard of the insured's death.

The company raised no question of its liability under the policy, but inasmuch as Miss Bessett, the administrators with the will annexed, and the next of kin of the deceased were making claim to the fund, it filed in the Superior Court its bill of interpleader, making all of the claimants respondents. By decree entered January 15, 1917, the complainant was ordered to pay into the registry of the Superior Court the sum of $9,441.30 as the amount less costs of suit and counsel fees due under the policy, the decree also providing that upon so doing it would be relieved and discharged from all liabilities to the said respondents for or on account of said fund. The complainant in compliance with the order paid the money into the registry of the Superior Court on January 19, 1917. The respondents (excepting one of the next of kin) have interpleaded and have been heard and a final decree was entered which directed the payment of the proceeds of the policy now in the hands of the clerk of the Superior Court to Cora I. Bessett. From this decree the said administrators are the only appellants. The administrators make two objections to the decree, the first that as a matter of fact Crone did not "authorize or issue" the nomination of Cora I. Bessett as beneficiary; second, that if he did designate her as beneficiary he did not accomplish the change in the manner called for in the policy.

The court below in its rescript finds that "after the life policy had been issued and returned to the local agent, Crone signed in blank a nomination of the defendant Cora I. Bessett as beneficiary," and that this "nomination of . . . beneficiary was completed before the death of said Crone so far as the filling out of said nomination paper," and in effect says that it was in the possession of the local agent for the purpose of being "returned to the home office

for endorsement upon the policy." We think that the court could properly so find and conclude from the evidence and, therefore, we accept as a fact that Crone did authorize and issue the nomination of Miss Bessett as beneficiary.

This leaves for consideration the question of whether a change of beneficiary was accomplished by what was done. (1) The provision of the policy relating to a change of beneficiary, so far as it is important in the present case, is as follows: "If the right to do so has been reserved in the application for this policy, the insured, if of full age, at any time during the continuance of this policy, may change and successively change the beneficiary hereunder, whether original or substituted, without his or her assent. . . . Every change or designation must be made by written notice to the company at its home office, accompanied by the policy, and will take effect only when endorsed on this policy by the company." Mr. Crone ·in his application reserved the right to change the beneficiary. The general rule in such cases requires the insured in changing the beneficiary to do it in the manner pointed out by the policy, the charter or by-laws of the corporation or by the statute applicable to the case, if such there be. Any material deviation from such requirements will defeat the attempted change. The cases on this point are so numerous as to render their citation unnecessary.

But there are exceptions to the rule above stated. Cooley on page 3,769 of Volume 4 of his Briefs on Insurance, says: "If, however, the insured has done substantially all that is required of him to effect a change of beneficiary, and all that remains to be done are the ministerial acts of the officers of the association, the change will take effect though the formal details were not completed before the death of the insured." See also Joyce on Insurance, Vol. 2, Sec. 751 and 14 R. C. L. Insurance, Sec. 556. In *Supreme Conclave, Royal Adelphia* v. *Cappella,* 41 Fed. Rep. 1, where the subject is carefully considered, these exceptions are grouped in three classes. An examination of the cases of this character shows

that in general they are proceedings in equity and that the decisions are based on equitable grounds. Cooley, in support of the proposition quoted above cites, among several other cases, *John Hancock Mut. Life Ins. Co.* v. *White,* 20 R. I. 457. In that case this court held that the insured had done everything necessary to change the beneficiary, and the fact that the change was not completed in its details was due to the neglect of the company.

In the more recent case of *John Hancock Mut. Life Ins. Co.* v. *Bedford,* 36 R. I. 116, the provision as to change of beneficiary was substantially the same as in the present case. The insured duly filed at the home office a written request upon a blank of the company for a change of beneficiary, but did not present the policy to have the change endorsed thereon, for the reason that the original beneficiary had it in her possession and refused to give it to the insured on his request. The court held that in consideration of the conduct of the original beneficiary in "unlawfully refusing to deliver up the policy" and of the facts "that the insured had done all that he could do to effect the change of beneficiary" and that the insurer had "disregarded or waived the provision of the policy requiring endorsement of any change of beneficiary" a change of beneficiary had been effected.

(2)  This court, therefore, has unmistakably adopted the view that an insured may change a beneficiary under an insurance policy (having reserved the right to do so) by doing all that is required of him to effect the change, or all that is possible for him to do, although certain formal or ministerial acts of the officers of the insurer are not performed before the death of the insured. The question in a particular case, therefore, will ordinarily be as to whether the acts required, but unperformed, were essential parts of the contract or were ministerial and formal details. This distinction will be found to be stated or implied in many of the decided cases although, as might be expected, courts may have differed as to what acts are ministerial and what essential.

This question must be determined by the terms and conditions of the contract contained in the policy and any statute affecting it.  If the right to change the beneficiary on the part of the insured be absolute and without condition and he does all that is required of him by the contract to effect the change, the mere endorsement or noting of the change has been held by many courts to be a formal or ministerial act.

This view was considered at length and upheld in *Mutual Life Co.* v. *Lowther*, 22 Col. App. 622 (1912).  The policy in that case contained a provision for a change of beneficiary by filing a written notice thereof at the home office of the company together with the policy, such change to "take effect upon the endorsement of the same on the policy by the company."  The insured died February 22.  Two days before his death he had mailed the policy and his written notice of a change of beneficiary to the home office of the company, where it was received February 24, and on February 27 the company endorsed the change on the policy. The court in its opinion considers the rights of the insured as to changing a beneficiary and the effect of the death of the insured before endorsement of the change on the policy. Referring to the written notice of change and the policy sent to the home office, it says, "Had they reached that office before his death the company was legally bound, under the contract, to file the same and endorse on the policy the change of beneficiaries as designated by him.  It had no discretion to exercise in the premises.  The company could not in the slightest degree question the revocation of the former beneficiary by the insured, nor the selection made by him of the substituted beneficiaries.  By the terms of the policy the company had conferred on the insured an unconditional right to, at any time or place, revoke the appointment of the existing beneficiary and substitute another in his place." . . . "Had the company, when making this contract, reserved any right to itself to control, or finally pass upon the actions of the insured in changing beneficiaries, we would be confronted with a different

question." . . . "Death intervening between the deposit of the notice in the mail and its full delivery at the home office may, and we think should, be regarded as one of the contingencies making it impossible to complete the change after all had been done that could be done by the insured, and that in such case . . . equity will treat the substitution as complete." . . . "It appears to the court illogical to hold that where the company was bound to give full force and credence to the change, the *time* of indicating its willingness to do what it was obliged to do, willingly or unwillingly, is of controlling importance." . . . "The receipt of the notice and policy by the company two days after insured's death, of which it had no knowledge, did not relieve it of the ministerial duty imposed by the terms of the contract, of filing and endorsing the same. There is in this case no question of waiver involved, as the company had no discretion in the premises." These citations are from pp. 629, 630 and 631. While this case does not appear to have been taken to the Supreme Court of the state, other decisions of that court recognize the exception referred to in the quotation hereinbefore cited from Cooley. See *Rollins* v. *McHatton*, 16 Colo. 203, 207; *Johnson* v. *New York Life Co.*, 56 Colo. 178. Among many other cases in which the insured did all that was required of him, or all possible for him to do, and a similar conclusion was reached are *McGowan* v. *Supreme Court of Independent Order of Foresters*, 104 Wis. 173; *Waldum* v. *Homstad*, 119 Wis. 312; *Wandell* v. *Mystic Toilers*, 130 Iowa 639; *National American Ass'n.* v. *Kirgin*, 28 Mo. App. 80; *Walsh* v. *Trust Co.*, 148 Mo. App. 179; *Grand Lodge A. O. U. W.* v. *McFadden*, 213 Mo. 269; *Marsh* v. *Supreme Council, Am. L. of H.*, 149 Mass. 512; *Luhrs* v. *Luhrs*, 123 N. Y. 367; *Hirschl* v. *Clark*, 81 Iowa 200; *Bernheim* v. *Martin*, 45 Wash. 120; *Berkely* v. *Harper*, 3 App. Cases, D. C. 308; *Supreme Conclave, Royal Adelphia* v. *Cappella, supra.*

But when the insured has not an unconditional right to change the beneficiary and the approval or assent of the

insurer is by the terms of the contract essential to such change, inasmuch as the giving of consent involves the exercise of judgment it has been held that such consent is not a formal or ministerial act and accordingly, although the insured may in such case do all required of him but dies before the insurer's consent is given, it has been held that in such case the change of beneficiary is not effected.

*Freund* v. *Freund*, 218 Ill. 189, is no doubt a leading case of the latter kind. The facts relative to the attempt to change the beneficiary, the subsequent death of the insured and the forwarding of the papers thereafter are practically the same as in the present case. The company did not, however, endorse the change on the policy. The provision in the policy as to a change in the beneficiary was substantially like that in the policy in this case. In that case the insurer was the New York Life Insurance Co. of New York. The statute of New York in force when the policy was issued, and which was held to be part of the contract, provided for a change of beneficiary "at any time with the consent of such corporation." The court's decision that a change of beneficiary did not take effect was based principally on the ground that "the proof in this case shows clearly and without dispute, that the company never did give its consent to the change of the beneficiary." It was also in effect held that the provision that the change of beneficiary should "not take effect until endorsed on this policy" was a material part of the contract in providing how "evidence of the company's consent to the change" was to be secured. *O'Donnell* v. *Metropolitan Life Ins. Co.*, 95 Atl. 289 (Del. 1915); *Sheppard* v. *Crowley*, 61 Fla. 735; *Metropolitan Life Ins. Co.* v. *Clanton*, 76 N. J. Eq. 4; *New York Life Ins. Co.* v. *Murtagh*, 137 La. 760, are cases of a similar nature in most of which the decision in *Freund* v. *Freund, supra*, is cited with approval.

In *Modern Woodmen of America* v. *Headle*, 88 Vt. 37, it was provided that no change in beneficiary became effective until "during the lifetime of the member" the old certificate was given up and a new one issued. In that case no change

was effected because the member died before the old certificate reached the home office, although after his death, but without knowledge of it, a new certificate was issued. In *Hughes* v. *Modern Woodmen*, 124 Minn. 458, by the contract the change was required to be made by the issuance of a new certificate in "the lifetime of the member." The other cases cited on the administrators' brief, so far as they are pertinent, for the most part show that the change was not effected because in some particular the insured was held to have failed to do all contractually incumbent on him in order to effect the change. We think no useful purpose would be served by discussing them in detail. And it does not seem necessary to consider separately the cases cited which hold that waiver by the insurer after the death of the insured cannot affect the vested rights of a beneficiary; for however it may be in other cases, in a case where the insured has freedom of choice of beneficiary, makes his choice and does everything required of him to render it effective, and there remains only the formal or ministerial act of noting the change, if he die before such notation be made, the question of waiver as to the performance of this act is not important, because equity regards the change as already effected by the act of the insured. If, however, the right to object to the nonperformance of a ministerial act does remain in the insurer, we think no one else can insist upon it and that the company could waive it. In the present case the company by making no attempt to recall its endorsement and by bringing Miss Bessett into court by its bill of interpleader can be held to have waived its right to object, if any it had. The form of the endorsement used by the company contains no language implying its consent to be necessary, and in fact it does not profess to give consent. It simply notes the change made by the insured. On the original policy the endorsement is "Worcester, Mass., April 25th, 1916. The insured under date of April 22nd, 1916, nominates his estate as beneficiary under this policy . . ." The endorsement of the nomination of Miss Bessett as ben-

eficiary under the new policy is in the same form.   In each instance the endorsement was signed by the vice-president of the company.   Mr. Crone in making this latter change did the same things he had done ten days before to change the beneficiary under the original policy.   In both cases he did all that was required of him to make the change.

For reasons already indicated we are of the opinion that the decision of the Superior Court and the final decree entered in conformity therewith were correct.

The appeal, therefore, is denied and dismissed, said decree is affirmed, and the cause is remanded to the Superior Court for further proceedings.

*Waterman & Greenlaw,* for complainant.

*Wm. H. McSoley,* for Cora I. Bessett.

*Philip S. Knauer, John F. Collins,* for Administrators, *estate of Wm. H. Crone.   Walter J. Ladd,* of counsel.