The Equitable Life Assurance Society of the United States, a corporation, complainant,

*v.*

Margarethe Janssen et al., defendants.

———

Massachusetts Mutual Life Insurance Company, a corporation, complainant,

*v.*

Margarethe Janssen et al., defendants.

[Decided October 26th, 1936.]

———

*Messrs. Hershenstein, O'Brien & Tartalsky,* for the defendant Margarethe Janssen.

*Messrs. Lichtenstein Schwartz & Friedenburg,* for the defendants Frederick W. Janssen, Jr., Emma Wieboldt and Margaret Biehler, individually, and Frederick W. Janssen and John Schlicthing, as executors, &c.

*Messrs. Gaede & Gaede,* for the defendant The First National Bank of Hoboken.

EGAN, V. C.

By agreement of counsel, the two above entitled matters were heard together, and the facts involved in both cases were stipulated. The Equitable Life Assurance Society of the United States, on Deecmber 23d, 1927, issued its policy of insurance number 4,598,431 on the life of Frederick W. Janssen in the amount of $10,000, naming as beneficiaries, Frederick W. Janssen, Jr., Emma Janssen and Margaret Janssen, children of the insured, equally or to the survivor of them.

The Massachusetts Mutual Life Insurance Company issued its policies of insurance on the life of the said Frederick W. Janssen as follows:

| Number | Date | Amount | Beneficiary |
|--------|------|--------|-------------|
| 583,866 | September 12, 1922 | $10,000 | Margaretha Janssen, wife, |
| 586,859 | October 11, 1922 | 10,000 | Margaretha Janssen, wife, |
| 725,639 | January 4, 1926 | 5,000 | Frederick W. Janssen, Jr., son. |

On October 8th, 1929, the insured, as settlor, and The First National Bank of Hoboken, as trustee, entered into a trust agreement by which it was agreed that the bank should collect and receive all sums payable to it upon the settlor's death, or prior thereto, pursuant to the terms of all the policies which should then be in force and effect, insuring the life of the settlor and designating "The First National Bank of Hoboken, Trustee." Attached to the trust agreement was a list of the policies in force at the time of the making of the agreement, in which was included the four policies above set forth. The trustee under the agreement was required to invest and reinvest the proceeds of the policies received by it; and the income arising therefrom, it was directed to pay to the defendant, Margarethe Janssen, wife of the settlor, for and during the period of her lifetime; and upon her death, the corpus was to be paid in equal shares to the children of the settlor; and if any of them should predecease Margarethe Janssen, then the share of each such deceased child, was directed to be distributed to his or her next of kin in accord-

ance with the intestate laws of this state in effect on the date of Margarethe Janssen's death. The trust agreement, *inter alia*, contained these two clauses:

"The settlor may deliver to the trustee any policy or policies of life insurance in which the trustee is named as beneficiary, but the trustee shall not be under any obligation to pay any premiums on any policy and the settlor may at any time cease to pay the premiums thereon and may at any time withdraw any or all of such policies.

"The settlor reserves the right at any time or from time to time, without the consent of any person and without notice to any person other than the trusee, to make such changes in the amount or character of the interests of the respective beneficiaries as he may desire, and to terminate the interest of any of said beneficiaries in favor of any other person or persons, upon notice in writing to the trustee directing such change or changes to be made, provided such written notice be executed and acknowledged as deeds for the transfer of real property in New Jersey are required to be acknowledged, but except for said reserved right to change the interests and/or the identity of the beneficiaries, this trust shall be deemed to be irrevocable, and no interest is reserved to the settlor or his estate except as herein expressly provided."

On November 4th, 1929, upon the written request of the insured, pursuant to the reserved right in the policy to change the beneficiaries therein, and with the written consent of the beneficiaries, the said policies issued by the Massachusetts Mutual Life Insurance Company were amended by endorsement which reads as follows:

"Springfield, Mass., November 4, 1929.

If this policy shall mature as a death claim the proceeds shall be paid to The First National Bank, of Hoboken, N. J., as trustee, or its successor in trust, in accordance with trust agreement dated October 8, 1929, without liability on the part of the Insurance Company to see to the carrying out of the terms of the trust; a legal request therefor having been received.

The right is hereby reserved to the insured to successively change the benefit hereunder, without the consent of any benficiary.

J. WELLS, Asst. Secretary."

The said last named policies contained the following provisions:

"If any beneficiary die before the insured, the interest of such beneficiary will vest in the executors or administrators of the insured unless otherwise provided herein.

"Subject to the rights of any assignee, the insured may, in accordance with any right reserved in the application for this policy, or amendments thereto, successively change the beneficiary hereunder; provided that any such change shall become operative only when endorsed upon the policy at the Company's Home Office pursuant to such form of request as the Company may require."

In the application for each of the above policies, or amendments thereto, the right was reserved successively to change the beneficiary thereunder without the consent of any beneficiary.

The Equitable Life Assurance Society policy contained the following provisions:

"(a) The Insured may from time to time during its continuance, change the beneficiary or beneficiaries by a written request, upon the Society's blank, filed at its Home Office, but such change shall take effect only upon the endorsement of the same hereon by the Society;

"If the executors, administrators or assigns of the Insured be not expressly designated as beneficiary and if there be no other beneficiary living at the death of the Insured, payment will be made to the surviving children of the Insured; or should none survive, then to the Insured's executors, administrators or assigns."

The insured, Frederick W. Janssen, by request in writing made to the Equitable Life Assurance Society, asked that the policy be rewritten; the said Society on April 8th, 1930, rewrote the aforesaid policy number 4,598,431, so that the name of the beneficiary therein became "The First National Bank of Hoboken." The policy as rewritten gave the right to the insured to change the beneficiary or assign the policy and contained the provision last above quoted.

The four aforesaid policies were delivered to The First National Bank of Hoboken to be held by it as trustee under the trust agreement.

On February 21st, 1935, Frederick W. Janssen was confined with a serious illness, in the Overlook Hospital, Summit, New Jersey, where he was awaiting a critical operation, which he believed might prove fatal to him. With that feeling, he decided to cancel the trust agreement between himself and The First National Bank of Hoboken, and withdraw from the operation of said agreement all of the policies con-

tained in said trust and to change the beneficiaries in said policies from The First National Bank of Hoboken, trustee, to Margarethe Janssen, his wife. To effect that intent, he, on said date, engaged the services of George A. Goodridge, an insurance broker, as his duly authorized agent for the purpose. On the day of his engagement, Goodridge telephoned the home office of the Equitable Life Assurance Society in New York City and stated to a Mr. Kelly, the Society's duly authorized representative, and a member of the change of beneficiary department of the Society, that Frederick W. Janssen was about to terminate the trust with The First National Bank of Hoboken, Trustee; that he was very sick and was about to undergo a very serious operation within a few days; and that, consequently, the Society promptly mail a change of beneficiary papers to him in behalf of Frederick W. Janssen so as to change the beneficiary in said policy to Margarethe Janssen, his wife; and that Mr. Janssen had made written request to the Society; and that haste was necessary because of the circumstances; and that he (Mr. Goodridge) was telephoning in advance of the receipt of the letter with respect to the situation in order to expedite the matter. In the course of the telephone conversation, Goodridge asked Kelly what the result would be if only Janssen's written letter requesting the change of beneficiary were received by the Society before his death, and not the signed forms for such purpose furnished by the Society. He was then assured by Kelly that the Society, like others, would take a reasonable view of the situation.

On the day last aforesaid, Goodridge sent to the Massachusetts Mutual Life Insurance Company, at Springfield, Mass., its home office, a telegram, and a letter, outlining, in effect, the subject-matter of the conversation which he had had over the telephone with Kelly of the Equitable Life Assurance Society. On the same day, at the Overlook Hospital, the insured, Frederick W. Janssen, with his wife, Margarethe, Margaret Biehler, Fred Janssen, Jr., and Emma Wieboldt, the three last named, his children, all of whom were the beneficiaries named in the aforesaid trust, executed and signed the following paper-writing:

"February 21st, 1935.

The First National Bank of Hoboken, N. J., Trustee, Hoboken, N. J.

Gentlemen:

Changing circumstances lead me to make the following request: I wish to withdraw from the Life Insurance Trust, dated October 8th, 1929, the following policies:

| | | | |
|---|---|---|---|
| Metropolitan | .......... | 3503372-A | $10,000.00 |
| " | .......... | 3843801 | 10,000.00 |
| " | .......... | 4796189 | 5,000.00 |
| " | .......... | 4796190-A | 10,000.00 |
| Massachusetts | ........ | 583866 | 10,000.00 |
| " | ........ | 586859 | 10,000.00 |
| " | ........ | 725639 | 5,000.00 |
| New York Life | ........ | 9301675 | 10,000.00 |
| Equitable Life | ........ | 4598431 | 10,000.00 |
| Prudential | .......... | 6697344 | 20,000.00 |

Will you kindly deliver these papers to my representative, Mr. George A. Goodridge, who will receipt for them? Thank you for your prompt compliance with this request.

Let me take this opportunity to thank you for all favors of the past, which I have appreciated.

Very truly yours,<br>(Signed) F. W. JANSSEN.

Witness:

JULIUS LICHTENSTEIN.

We, the undersigned, consent to the above.

February 21st, 1935.

MARGARETHE JANSSEN,<br>MARGARET BIEHLER,<br>FRED JANSSEN, JR.,<br>EMMA WIEBOLDT.

Witness:

JULIUS LICHTENSTEIN.

Receipt is acknowledged this day of the above mentioned life insurance policies.

GEORGE A. GOODRIDGE."

At the said time, February 21st, 1935, at the hospital, the insured, Frederick W. Janssen, signed the following letters intending that they be filed at the home offices of the respective insurance companies, thereby to effect changes of beneficiary under the said policies to his wife, Margarethe Janssen, viz.:

"February 21st, 1935.

Massachusetts Mutual Life Insurance Company,
Springfield,
Mass.

Gentlemen:   Re:   Policies Nos.: 583866;   586859;   725639.

This is to notify you that I am terminating the Life Insurance Trust of October 8th, 1929, with The First National Bank of Hoboken, New Jersey. I wish to name as beneficiary my wife, Mrs. Margaretha Janssen. Will you kindly prepare promptly the necessary papers for my signature.

Thank you for your cooperation.

Very truly yours,

FREDERICK W. JANSSEN."

"February 21st, 1935.

Equitable Life Assurance Society,
393 Seventh Avenue,
New York City.

Gentlemen:   Re:   Policies Nos.: 4598431.

This is to notify you that I am terminating the Life Insurance Trust of October 8th, 1929, with The First National Bank of Hoboken, New Jersey. I wish to name as beneficiary my wife, Mrs. Margaretha Janssen. Will you kindly prepare promptly the necessary papers for my signature.

Thank you for your cooperation,

Very truly yours,

FREDERICK W. JANSSEN."

Those letters were mailed to both insurance companies in the afternoon of February 21st, 1935. On the same day, at about five o'clock in the afternoon, The First National Bank of Hoboken delivered the four policies to Goodridge, aforesaid, upon the presentation by him of the letter addressed to it, above set forth. On receiving the policies from the bank, on the date last mentioned, Goodridge, for and in behalf of Frederick W. Janssen, mailed at the United States post office, all of the Massachusetts Mutual Life Insurance Company's and the Equitable Life Assurance Society's policies to the home offices of the companies, enclosing with them a memorandum indicating that they were policies for the insurance companies' attention as per the insured's letter of February 21st, 1935. The policies were, in due course, received by the insurance companies prior to the death of Frederick W. Janssen. His death occurred on the morning of February 25th, 1935. The day following the mailing of the policies to

the insurance companies, February 22d, 1935, was Washington's birthday, a holiday, and the companies were not then engaged in the transaction of business. The situation was the same on Saturday, February 23d, 1935; the home office of the Equitable Life Assurance Society was closed and it was not then engaged in the transaction of business. On February 25th, 1935, Goodridge received from the home office of the Massachusetts Life Insurance Company the following communication:

"February 23d, 1935.

Mr. George A. Goodrich,
50 Church Street,
New York, N. Y.

Re: Frederick W. Janssen
7 policies: 583,866
586,859
725,639
556,948
583,865
636,017-013

Dear Mr. Goodrich:

We enclose herewith seven amendments for signature of Mr. Frederick W. Janssen, with any witness, changing benefit under the policies in favor of his wife, Margaret Janssen.

The first three policies are under a Trust Agreement dated October 8, 1929, with First National Bank, of Hoboken.

It will be necessary to have the Trust Agreement revoked and proper letter of revocation furnished this Company by the Trustee Bank, dated prior to the dating of the three amendments enclosed under these three policies.

Please be sure to send us all seven policies for endorsement when returning the signed amendments and revocation letter.

Very truly yours,
F. H. Lewis,
General Agent."

This letter was received by Goodridge at his office on the morning of February 25th, 1935, after the death of Janssen.

Frederick W. Janssen left a last will and testament dated February 21st, 1935, and named therein as executor and trustee, John Schlichting and Frederick W. Janssen, Jr., his son. The will was probated by the surrogate of Union county on March 9th, 1935. The executor and trustee named therein qualified on said date.

The insurance companies' attorneys filed their respective bills of interpleader, alleging that they could not safely pay the amount due on the policies in question to any one person because The First National Bank of Hoboken, as trustee, Margarethe Janssen, the executors of Frederick W. Janssen's estate, and the children of Frederick W. Janssen, had all requested payment thereof, and were discharged by interlocutory decrees by paying into this court the net amount due under said policies.

Were the rights of the First National Bank of Hoboken to the proceeds of the four policies terminated and destroyed by the withdrawal of the policies pursuant to the request of the insured on February 21st, 1935? It is my belief that they were. The last two lines of the first clause of the trust agreement above set forth states that the settlor "may at any time withdraw any or all of such policies." In accordance with that stipulation, the settlor, in his lifetime, withdrew the policies in question from the custody and possession of the bank, which act, in my opinion, unquestionably implied, and caused, a revocation of the trust agreement. The policies were the subject of the trust agreement. With their withdrawal, the purpose of the agreement no longer existed. The settlor recited in his request for the withdrawal that his action was due to "changing circumstances." He stated that he wished to withdraw the policies "from the life insurance trust." He said that it was his intention to change the beneficiary in the policies from the trustee, and substitute as such, his wife. He did everything, in so far as he was able, to accomplish that result. He withdrew all his policies which had been in the possession of the bank, clearly indicating thereby that it was his intention to terminate, cancel and destroy the trust. *Prudential Insurance Co.* v. *Reid,* 107 *N. J. Eq.* 338; 152 *Atl. Rep.* 453; *Prudential Insurance Co.* v. *Swanson,* 111 *N. J. Eq.* 477; 162 *Atl. Rep.* 597. The defendant, The First National Bank of Hoboken, stresses paragraph 7 of the trust agreement which recites that except for certain reserved rights to change the interest and (or) the identity of the beneficiaries, the trust shall be deemed to be irrevocable, and no interest is reserved to the settlor or his estate as therein

expressly provided. In considering written instruments, the court will endeavor to so construe them as to make all its parts, consistent with each other, stand. Therefore, the trust agreement in the instant case, I construe to be irrevocable only as to the policies which had not been withdrawn from the operation of the trust at the time of the settlor's death.

The language in the trust agreement, quoted above, that the settlor may at any time withdraw any such policies, is most effective; and, when invoked, will produce an implied cancellation of the trust agrement as to those policies withdrawn by the settlor. Since the settlor withdrew the policies, which was his right under the terms of the trust agreement, what act, under the agreement, was then left for the bank to perform? It was left without power. The right of the bank to the proceeds due under the policies was extinguished with the withdrawal of the instruments which were the basis of the trust fund.

Since my determination is that there was a revocation of the trust as to the policies involved, then next for consideration arises the claim of the widow as beneficiary under the policies. The bank's interest in the trust having ceased with the failure of the trust, leaves the executors and the children as the only ones interested in the policies. The children are all of age; and, they, through their counsel, stipulated, in open court, that it would not be necessary for me to decide this further question. Counsel for the widow stated that she consents that the proceeds of the Massachusetts policies be paid to the executors, and that the proceeds of the Equitable policy be paid to the children.

I feel that the clauses of the policies concerning the payment of the proceeds in the event that there is no living beneficiary at the time of the insured's death are applicable to the pending situation, and that the proceeds of the Massachusetts Mutual Life Insurance policies should be paid to the executors of the insured, and that the proceeds of the Equitable Life Insurance policy should be paid to the children of the insured.

I will advise an order to conform with these conclusions.