METROPOLITAN LIFE INSURANCE COMPANY, complainant,

*v.*

JOHN J. HAGGERTY et al., defendants.

[Submitted May 29th, 1931.  Decided February 1st, 1932.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following conclusions:

"The complainant has paid into court the amount due under its policy of insurance, dated January 5th, 1910, on the life of the defendant John J. Haggerty and the question to be determined is whether the entire amount should be ordered paid to him or one-half thereof and the other half to his former wife, Catharine A. Haggerty, the other defendant.

"By the policy the complainant, in consideration of an annual payment to be made for twenty years, or until the prior death of the insured, agreed to pay $1,200 to the insured if he should then be living or, in case of his prior death, to his mother. The defendants became husband and wife September, 1916, and separated in 1920. They resumed living together in October, 1921, and the husband then revoked the designation of his mother as beneficiary and named his wife in her stead. The defendant wife testified that he then told her that if he lived to the maturity of the policy she should have one-half of the proceeds and that he then gave her the policy for safe keeping and for her protection. The defendant husband testifying denied such promise and said he never gave her the policy. They separated again in October, 1925, she taking the policy with her and he subsequently obtained a divorce from her. He paid all the annual premiums and when the policy matured in January, 1930, he requested her to surrender it to him and she refused and both made demand on the complainant for payment, whereupon the complainant filed its bill of interpleader herein.

"Reference is made to the following provisions of the policy: First, the right is reserved to the insured to change the beneficiary, any such change to be made by filing written notice with the insurer, accompanied by the policy, the change to take effect upon endorsement on the policy. Second, no assignment of the policy shall be binding on the insurer unless filed with it. Except for making the change in the policy whereby the insurance was made payable to his wife instead of his mother, the insured attempted no change in beneficiary and made no assignment of the policy in writing.

"The policy provision concerning change in beneficiary has no application, no such change having been attempted. The provision concerning assignment was an agreement between the insurer and the insured alone and because the insurer has paid the insurance money into court, said provision has no bearing upon the controversy between the two defendants. As between them a valid gift of the policy, or

of an interest therein, could be made without written assignment or notification of assignment to the insurer. It could be effected in the manner in which the defendant wife claims it was made, namely, by delivery of the policy to her accompanied by words indicating an intention to make a gift and the subsequent retention of the policy by the wife. *Prudential Insurance Co.* v. *Deyerberg, 101 N. J. Eq. 90.*

"The two defendants were the only witnesses sworn and each gave meagre testimony each denying the other's claim. For the first five years of their married life the husband's mother continued to be the beneficiary under the policy in the event of the insured's death and his wife had no interest therein. The defendants separated in 1920 and it was not until they got together again in October, 1921, that the husband made the wife beneficiary and she claims it was then he handed her the policy and told her she was to receive half the proceeds on its maturity. They had just become reconciled and she says he made the gift because of that fact. It appears from her testimony that when she agreed to live with him again she gave consideration to the future for herself and their child, in the light of the past, and it would be only natural for him, upon making her the beneficiary under the policy in the event of his death, to deliver the policy to her and it would also be natural at such a time, to show his desire that their future might be happy by agreeing that she should receive half the policy proceeds if he and she lived to its maturity. Thereafter the defendants lived together for four years and when they separated again she had possession of the policy and took it with her. He says she also took personal property belonging to him and that although he then discovered the policy was missing, he did not know she had it until after it had matured. Knowing that she had taken his personal property and missing the policy, he must at least have suspected she had taken it. She says he spoke to her about the policy several times before it matured and that she told him she had it. I am satisfied he knew she had taken the policy with her when she left him, yet if she was not entitled to it, he took no steps to obtain possession of it, or to

make a change in beneficiary, but continued to keep the policy in force by paying the annual premiums as they fell due after 1925. It may be argued that he could not change the beneficiary without surrendering the policy for endorsement. By its terms he had the absolute right to revoke the designation of beneficiary and if, in consideration of their reconciliation in 1921, or for some other reason, he had not promised to make her the beneficiary in case of his death and to give her a half interest in the proceeds in the event he survived the maturity date of the policy and she, therefore, had no right to the policy, he could have demanded its return to him and upon her refusal to surrender it, he could have given formal notice to the insurer of a change in beneficiary and stated the reason why he could not produce the policy for endorsement.

"I conclude that the defendant wife's possession of the policy and her testimony as to how and why it came into her possession, supported by the circumstances and probabilities, establishes her claim to one-half of the fund in court and that the same should be ordered paid to her and the other half ordered paid to the defendant husband."

*Mr. Archie Elkins,* for the appellant.

*Mr. Paul J. Duffy,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons expressed in the conclusions of Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 15.

*For reversal*—None.