This interpleader suit grows from a group insurance policy written by complainant for General Electric Company, and from a certificate thereunder issued by complainant to one of the company's employes, Mike Matwijizyn. Complainant thereby promised to pay, upon the employe's death, $2,000 to the beneficiary designated by him. The policy also provided, in lieu thereof, that in the event of the total and permanent disability of the employe, complainant would "begin making payments to such employe or to a person designated by him for the purpose," of five annual installments of $428 each. "Should death of the disabled employe occur, any remaining installments shall be paid to the Beneficiary nominated by the employe, or such Beneficiary may have the remaining installments paid in one sum."
Matwijizyn contracted tuberculosis and became disabled. He engaged defendant Poliakoff, an attorney, to prosecute his claim under the policy. The company at first replied that the policy had lapsed for non-payment of premium but was finally convinced by Poliakoff that the claim was valid. It made three annual payments of $428 each, and then Matwijizyn died. Conflicting claims were made for the two remaining installments, so the company filed the bill. *Page 527 
A claimant for one-half the installments is Poliakoff, who relies on the contract whereby Matwijizyn retained him, and further — "In consideration of the services rendered and to be rendered by the said David A. Poliakoff, my attorney, I hereby agree to pay him and he is authorized to retain out of any moneys that may come into his hands, fifty per cent. of all sums received or recovered by him by suit, settlement or otherwise, by reason of the above claim." A copy of this instrument was promptly filed with complainant. Matwijizyn never expressed any dissatisfaction with his bargain with Poliakoff and, in accordance with it, he paid to Poliakoff or allowed him to retain, half of each of the three installments received in his lifetime. Under circumstances which have been proved, the arrangement seems to me to have been fair to the client.
Both the group policy and the individual certificate stated that the right to change the beneficiary was reserved. At the time Matwijizyn and Poliakoff entered into their contract, the beneficiary named in Matwijizyn's certificate, was "Estate." Two years later, he designated as beneficiary his nephew, John Matwijizyn, who is the other defendant. He has been paid one-half the sum which remained unpaid at the death of insured. Only the other half is in dispute.
To win the fund, Poliakoff must show that his contract with assured operated as an assignment, or at least gave him an equitable lien which ripened into title on non-payment of the stipulated fee.
Generally, a chose in action is assignable; but not if the contract from which the chose grows, forbids assignment. Grigg
v. Landis, 19 N.J. Eq. 350; reversed, 21 N.J. Eq. 494. So we examine first the contract of insurance. The master policy issued to the Electric Company contained this provision: "No assignment by any employe of his insurance under this policy shall be valid." Matwijizyn's certificate did not mention the subject of assignment but stated that the employe was insured "under and subject to the terms and conditions" of the group policy. The two instruments taken together constitute the contract; the provision against assignments is as valid as if repeated in the certificate. *Page 528 
The prohibition to assign is subsidiary. The court must seek the real intention of the parties and carry that into effect. If an assignment under the circumstances of the case will not interfere with fulfillment of the parties' intention, the prohibition will be disregarded. Grigg v. Landis, 21 N.J. Eq. 494
(at p. 510). Or the party for whose benefit was inserted the covenant against assignments, may waive it, and other interested parties cannot take advantage of the covenant.Burnett v. Mayor, c., of Jersey City, 31 N.J. Eq. 341.
There were three parties to the insurance contract — the complainant, the Electric Company and the insured. The non-assignability clause may have been inserted in the interest of complainant, to facilitate payment. But complainant does not object to the assignment; it has paid the money into court and is indifferent between the claimants. The claim of Poliakoff, as assignee, is valid as against attack based on complainant's rights. Travelers' Insurance Co. v. Grant, 54 N.J. Eq. 208.
Or the clause in question may have been, and probably was, written for the benefit of the Electric Company. "The chief reason the coal company [employer] had for effecting and keeping paid the cost of this insurance for its employes was that they might thereby be induced to continue in its service. Such tendency as the insurance had to that end would be destroyed completely by the assignment of the policy and its benefits."Metropolitan Life Insurance Co. v. Brown (Ky.),300 S.W. Rep. 599. But the concern of the Electric Company ceased when Matwijizyn left its employ, permanently disabled, and the policy became payable. Assignment thereafter could not jeopardize the purpose for which the prohibition of assignment had been made.
Besides the complainant, the Electric Company and the assured, it may be suggested that there was a fourth party interested, namely, the beneficiary. But in this instance the policy was payable to assured's estate. "While the word `estate' is not very apt, its meaning is clear. The parties undoubtedly meant that the money should be paid to the insured's executor or administrator, to be administered as a *Page 529 
part of the property which insured might leave at his death."Coghlan v. Supreme Order, c., of Heptasophs, 86 N.J. Law 41.
An endowment policy in favor of "estate" is payable to insured himself, if it matures in his lifetime. In re Stewart's Estate
(Pa.), 163 Atl. Rep. 754. In the instant case, therefore, there was no fourth party in interest. The statement in the policy that no assignment of the insurance should be valid, does not affect whatever rights Poliakoff may have. Did Poliakoff's contract transfer to him a one-half interest in the proceeds of the policy, or give him a lien thereon?
An assignment may be effected by parol. Travelers' InsuranceCo. v. Grant, supra. In former days, a writing was used not to pass legal title, but to declare a trust and to authorize the assignee to sue in the name of the assignor, but for his own benefit. Allen v. Pancoast, 20 N.J. Law 68; Sullivan v.Visconti, 68 N.J. Law 543. No particular form is now necessary; any writing which plainly makes an appropriation of the fund is esteemed an assignment. Bower v. Hadden Blue Stone Co.,30 N.J. Eq. 171. But it is also established that an agreement to pay out of a particular fund does not operate as an assignment because it implies that the covenantor is to retain control over the fund and that more remains to be done on his part to make the transfer effectual. Lanigan's Adm'r v. Bradley Currier Co.,Ltd., 50 N.J. Eq. 201; American Pin Co. v. Wright, 60 N.J. Eq. 147; Myers v. Forest Hill Gardens Co., 103 N.J. Eq. 1;affirmed, 105 N.J. Eq. 584.
However, a contract by a client to pay his attorney compensation out of the fund to be realized by his efforts, raises an equitable lien in favor of the attorney as against the client, which fastens to the fund as soon as it takes form.Wilson v. Seeber, 72 N.J. Eq. 523, dealt with a contract between attorney and client, whereby the former agreed to pay the latter for his services one-third of whatever money should be received on his claim. Vice-Chancellor Pitney, after a careful review of the authorities, found that the attorney had an equitable lien. His decision is the more *Page 530 
impressive because he also penned the opinions in Lanigan'sAdm'r v. Bradley Currier Co., Ltd., supra, and American PinCo. v. Wright, supra.
Recent cases on the subject may be found in 7 C.J.S. 1071. As to equitable liens in general, see Rutherford National Bank v.H.R. Bogle Co., 114 N.J. Eq. 571, and Hadley v. Passaic,c., Trust Co., 113 N.J. Eq. 548.
The opposing claimant cites Weller v. Jersey City, c.,Street Railway Co., 66 N.J. Eq. 11; 68 N.J. Eq. 659. That case was sufficiently distinguished in Wilson v. Seeber on the grounds that it arose out of a retainer in an action of tort for personal injuries and was a contest, not between attorney and client but between attorney and the tort feasor.
Was Poliakoff's lien confined to the insurance installments that fell due in the insured's lifetime? I think not. The answer is determined by the intention of the parties. They doubtless contemplated that the attorney's services would be complete when complainant was persuaded of the validity of the insurance claim; that thereafter over a period of years would follow payment of the insurance and payment of the attorney. The fair value of the attorney's services was not affected by the death of insured; and that happening should not be permitted to reduce his compensation.
John Matwijizyn, the beneficiary of the policy, relies onSullivan v. Maroney, 76 N.J. Eq. 104; affirmed, 77 N.J. Eq. 565,
and Anderson v. Broad Street National Bank, 90 N.J. Eq. 78; 91 N.J. Eq. 331, contests between assignees of the insured and the beneficiaries, in which the latter were victors. The policy in the Sullivan Case was payable to insured's children "if living, otherwise to the insured's executors, administrators or assigns." The court held: "There were, therefore, always two sets of interests in this policy — the beneficiaries (who would get the money if they were living at the death of the insured) and the representatives of the insured (to whom the money would come if the insured outlived the beneficiaries). Each of these interests was undoubtedly subject to assignment. Neither one could, in my view, assign anything excepting that which would come *Page 531 
to that one; and the assignment of neither could possibly impinge upon the rights of the other. In other words, the beneficiaries, if of age, could undoubtedly assign their interests under the policy, and the insured could undoubtedly, as against her estate and so as to bind it, assign that interest, i.e., the interest which would come to her estate." And that the assignee could receive only what the insured had, under the policy, to give, which was the contingent interest of her estate in default of the children surviving her. The principle of the Anderson Case is the same.
As already noted, Matwijizyn's policy was payable to his "estate" when Poliakoff acquired a lien on the proceeds. No one then had an interest in the policy save insured; the entire proceeds were under his control and were subjected by him to Poliakoff's lien. Once the lien was given, it could not be defeated by the action of insured in naming a beneficiary. John Matwijizyn can claim only as insured's nominee; his title is subordinate to the encumbrance which insured had created.
Decree for Poliakoff.