CONFEDERATION LIFE ASSOCIATION *vs.*
WAYNE C. ALLINSON *et al.*

JANUARY 24, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a bill in equity praying that the respondents be directed to interplead for the proceeds of a

policy of insurance on the life of Mavis W. Allinson. Each of the respondents filed an answer and after a hearing on the bill, answers and proof, a decree was entered in the superior court awarding the sum due under the policy to the respondent Eileen W. Feehan, a sister of the insured. The cause is before us on the appeal of the respondent Wayne C. Allinson, a stepson of the insured.

The principal issue raised by appellant is whether the trial justice erred in deciding that Mrs. Feehan was the lawfully designated beneficiary of the insured at the time of the latter's death.

At the January session, 1960, the general assembly enacted P. L. 1960, chap. 119, providing group life, accidental death and other insurance benefits for state employees. The act was approved on May 6, 1960, effective as of July 1, 1960. On August 18, 1960, pursuant to the provisions of the act, the state entered into a contract with complainant whereby the latter issued a group life insurance policy covering state employees, effective as of July 1, 1960.

The insured had been for many years an employee of the division of women and children in the state department of labor. On May 27, 1960 she elected to be included in the group life insurance policy by filling out a certain form entitled "Selection Of Beneficiary" wherein she named the appellant as beneficiary. These forms were distributed, executed and returned wholly within the offices of the division of women and children and were then turned over either to the director of the department of labor or to the division of accounts and control.

Pursuant to the terms of the policy complainant was to issue to the insured a certificate entitled "Group Insurance Certificate" certifying that she was insured in accordance with and subject to the terms of the group policy. A copy of said certificate is in evidence. Under the terms of the

policy, the right to change beneficiaries was reserved to the insured and the state was to act as the administrative agent for complainant and was to maintain the records relating to the beneficiaries of the individual certificates issued to the employees.

In June 1960 the insured went on sick leave from her job because of a serious illness necessitating hospitalization and major surgery after which she died on November 16, 1960. Upon her death each of the respondents made claim upon complainant for payment of the proceeds of the policy. The complainant raised no question of its liability, but because of the conflicting claims made by respondents it filed in the superior court the instant bill of interpleader making both claimants respondents. By decree entered on October 13, 1961 complainant paid into the registry of the superior court the amount of the policy, less costs and counsel fees, and was thereby discharged of all liability to respondents under the policy. The respondents were ordered to interplead for the balance of the proceeds.

It appears from the transcript of the hearing in the superior court that this controversy results from certain events which occurred in July, August and September of 1960. Mrs. Feehan bases her right to the proceeds of the policy on the following events. In July 1960, after her discharge from the hospital, the insured went to a nursing home in the town of Lincoln where she remained until August 5, 1960. While there she told her sister that she had taken out a new group insurance with the state and that she was going to make her the beneficiary. On August 5, 1960 she went to stay with her sister at the latter's home in Lincoln where she remained until August 21, 1960.

According to the testimony of Mrs. Feehan, Miss Anne E. Dolan and Mrs. Margaret F. Ackroyd the following events took place during the insured's stay at her sister's home. On August 8, 1960 the insured telephoned Miss

Dolan, a co-worker in the division of women and children, and told her that she wanted to change the beneficiary on her group life insurance policy and make Mrs. Feehan the beneficiary. She asked Miss Dolan to send her the necessary papers. The following morning the insured received in the mail a form similar to the one she had originally filled out on May 27, 1960. She filled it out and mailed it back to Miss Dolan. Mrs. Feehan testified that she did not see the form after it was completed.

The next day Miss Dolan received the form in the mail. It named the insured as the beneficiary. Mrs. Feehan's name did not appear. Miss Dolan assumed that it was incorrectly filled out and she thereupon conferred with her supervisor, Mrs. Ackroyd, the chief of the division of women and children, and was instructed to take another form to Mrs. Feehan's home and see to its proper execution by the insured. Miss Dolan telephoned the insured and informed her that she had named herself as beneficiary whereupon the insured asked her to bring another form.

On the afternoon of the same day, August 10, 1960, or on the following day, Miss Dolan went to Mrs. Feehan's home with another selection of beneficiary form. The insured filled it out and named her sister, Mrs. Feehan, as beneficiary and then handed the form back to Miss Dolan.

After Miss Dolan left, Mrs. Feehan told the insured that someone could say that she asked her to change the beneficiary whereupon the insured said she would take care of that. She wrote a note, which is in evidence, stating that she had named her sister as her beneficiary in the new death policy which had recently been issued by the state and that she was "in sound mind and body and fully aware of what" she was doing. The insured antedated the note July 22, 1960 so that it would appear that she had written it while she was at the nursing home in Lincoln and not while she was at her sister's home and possibly exposed to undue influence by her sister.

On the following day Miss Dolan took the completed form to her office and left it on Mrs. Ackroyd's desk for countersignature by her or the director of the department. After it was countersigned it was returned to Miss Dolan's desk. She put the form in an envelope together with a memo asking that the change of beneficiary be noted and she then sealed the envelope and placed it in a basket on her desk for collection by the interoffice or interdepartmental mail carriers. The envelope was addressed to the Division of Accounts and Control which was then handling all records pertaining to beneficiaries of the group life policy. She never checked to ascertain if this form had been recorded. She was the last person to see it. There is no record of its having been received by the division of accounts and control. The form has never been found. At the time of the insured's death the only beneficiary form on record was the one dated May 27, 1960 designating the appellant as beneficiary.

The appellant relies on the following evidence to support his claim as beneficiary. It appears from the evidence that on August 21 or 22, 1960, the insured left her sister's home for a two-week visit with her stepson at his summer home. While there the insured discussed her personal and financial affairs with him and his wife. She told them she wanted him to be the beneficiary of her group life insurance policy and she thought he was, but she had done something concerning insurance while at her sister's home. She asked him to check on it to ascertain who the beneficiary was.

In accordance with her request he telephoned R. Alden Clarke at the division of personnel and was informed that according to their records he was designated as beneficiary on the form on file. The appellant testified that he reported this information to the insured and the question was never again discussed by them. She left appellant's home on September 4, 1960 and went to live in her own home in

Rumford until the latter part of September when she moved to a nursing home in East Providence. She stayed there until November 10 when she entered the Miriam Hospital where she died on November 16.

The trial justice accepted the evidence of both respondents as credible. With respect to Mrs. Feehan's claim that the insured had made a change designating her as beneficiary, he ruled that the burden of proof was on Mrs. Feehan to prove that there was substantial compliance with the requirements of the policy relating to changes of beneficiaries. After discussing the evidence and the law, he found in substance that the insured was competent and knew what she was doing; that the form designating Mrs. Feehan got into the hands of the state as the person who was to record the change of beneficiary; that the form was lost or mislaid after it reached its destination; that the insured had done all that she reasonably could do to make the intended change; that Mrs. Feehan had sustained the burden of proving substantial compliance with the requirements of the policy; and that the designation of Mrs. Feehan as beneficiary was effective.

He also found that there was no evidence that the insured intended to make respondents cobeneficiaries; that all the evidence indicated that at one time she wanted her sister and at another time she wanted her stepson; that she effectively carried out her intention to make her sister the beneficiary by substantial compliance with the policy requirements; that while at her stepson's summer home she again desired to designate him as beneficiary, but she did nothing to effectuate her intention to name him and therefore there was no substantial compliance with the policy requirements.

Under his reasons of appeal appellant in substance contends that the decree awarding the proceeds to Mrs. Feehan is against the law and the evidence and the weight thereof.

He has briefed and argued such reasons under four main points. For convenience we shall treat them in like manner.

Under point I appellant argues in substance that the evidence does not support the trial justice's finding that there was substantial compliance with the policy requirements to effectuate the insured's intent to name her sister as beneficiary and that therefore the trial justice erred in awarding the proceeds of the policy to the sister. In the posture in which this issue is presented the question whether there has been strict compliance with the policy requirements is not before us. The narrow issue which we must resolve is whether the evidence supports the finding of substantial compliance. The fact that the form designating Mrs. Feehan as beneficiary is entitled "Selection Of Beneficiary" is of no material significance in deciding this issue. It is abundantly clear that in filling out such form the insured intended to change the beneficiary of the policy. As we have just stated, the only question is whether there was substantial compliance with the requirements of the policy in effectuating such change.

The following are some of the provisions of the group policy and the certificate issued to the insured. Clause 3 of part II of the policy reserves to the insured the right to change beneficiaries. The pertinent portion thereof reads as follows: "An employee may, at any time during the continuance of this Policy, by notice in writing signed by the employee and deposited with the Employer, appoint a beneficiary or change the beneficiary or beneficiaries already appointed * * *."

Clause 1 of part II of the policy relates to the payment of insurance upon the death of an insured employee and reads as follows: "* * * the Association hereby promises to pay to the beneficiary last legally designated in writing

by such employee, the amount of Group Life Insurance for which such employee is insured under this Policy * * *." Substantially the same provision appears in the "Group Insurance Certificate," the pertinent portion of which reads as follows: "* * * the Association hereby promises to pay * * * to the beneficiary last legally designated by the employee and as recorded by the Employer as being a beneficiary * * *."

The uncontradicted evidence supports the finding that the insured signed a notice in writing in accordance with the requirements of clause 3. The question remains whether the evidence supports the finding that there was substantial compliance with the requirement that such notice be deposited with the employer. The appellant concedes that Miss Dolan was the agent of the insured in this transaction and that the division of accounts and controls, to which the envelope containing the form was addressed, was then the proper depository. Although the form has never been found and the record does not show what happened to it after it was placed in the basket on Miss Dolan's desk, we are of the opinion that the trial justice was justified in finding that it got where it was supposed to go; that it got lost or mislaid thereafter; and that in the circumstances there was substantial compliance with the requirement in clause 3 that the form be deposited with the employer.

Keeping in mind the fact that this is a bill of interpleader and not an action at law, it is our opinion that the reasoning of the court in *Metropolitan Life Ins. Co.* v. *Sandstrand*, 78 R. I. 457, is applicable. Although it differs factually from the case at bar, the principle involved is the same.

In *Sandstrand*, at page 462, the court stated the rule as follows:

> "However, in our judgment such compliance requires that an insured must intend and personally or through an authorized agent send a change of beneficiary to the insurance company. In other words, he must do all

that he reasonably could be expected to do in the circumstances in order to effectuate his intention to change the beneficiary in the policy. If an insured meets such requirement in a proper case his action is given effect even though such a change had not reached the home office of the insurer before the death of the insured. *State Mutual Life Assurance Co.* v. *Bessett,* 41 R. I. 54."

In our opinion the trial justice correctly applied the substantial compliance rule notwithstanding the provision in the certificate issued to the insured providing for payment "to the beneficiary last legally designated by the employee and as recorded by the Employer as being a beneficiary * * *." In the view that we take Mrs. Feehan was the beneficiary "last legally designated" by the insured. The phrase "and as recorded by the Employer as being a beneficiary" merely contemplated ministerial action by the state, as employer, in formally recording the change of beneficiary made by the insured.

Our conclusion on this point is consistent with the reasoning of the court in *State Mutual Life Assurance Co.* v. *Bessett,* 41 R. I. 54, where, in discussing the rule governing changes of beneficiaries, the court stated at page 58:

"This court, therefore, has unmistakably adopted the view that an insured may change a beneficiary under an insurance policy (having reserved the right to do so) by doing all that is required of him to effect the change, or all that is possible for him to do, although certain formal or ministerial acts of the officers of the insurer are not performed before the death of the insured. The question in a particular case, therefore, will ordinarily be as to whether the acts required, but unperformed, were essential parts of the contract or were ministerial and formal details. * * * If the right to change the beneficiary on the part of the insured be absolute and without condition and he does all that is required of him by the contract to effect the change, the mere endorsement or noting of the change has been held by many courts to be a formal or ministerial act."

See also *John Hancock Mut. Life Ins. Co.* v. *White,* 20 R. I. 457, and *John Hancock Mut. Life Ins. Co.* v. *Bedford,* 36 R. I. 116.

Under point II the appellant argues that the insured abandoned her intention to name her sister as beneficiary. It is true that after the insured had designated her sister as beneficiary and given the change of beneficiary form to Miss Dolan, she again desired to make the appellant the beneficiary. But she did nothing to effectuate such change. In our opinion the evidence clearly supports the trial justice's finding that there was no substantial compliance with the requirements of the policy to effect such change. Having lawfully designated her sister as beneficiary, her desire to again name the appellant, without more, was not sufficient in law to effect the desired change of beneficiary.

Under point III the appellant concedes that ordinarily the formal requirements in a policy prescribing the manner of changing the beneficiary are for the benefit of the insurance company and may be waived by it by filing a bill of interpleader. However, he contends that in the peculiar circumstances of this case complainant is estopped from waiving the requirement of recording by the employer because the insured relied upon the state's representation that the appellant was the recorded beneficiary.

[4] In our opinion this contention is without merit. The requirement for recording the name of the beneficiary was for the protection of complainant and by bringing the bill of interpleader it has waived such requirement. See *Metropolitan Life Ins. Co.* v. *Sandstrand, supra,* at page 462. See also *John Hancock Mut. Life Ins. Co.* v. *White, supra,* at page 459.

The appellant's contention under point IV that the trial justice failed to balance the equities between the parties is lacking in merit. After carefully examining the entire record and considering all of the appellant's contentions under

his reason of appeal, it is our opinion that the findings of fact made by the trial justice are supported by the evidence and that he did not err in deciding that Mrs. Feehan was entitled to the proceeds of the policy.

The appeal of Wayne C. Allinson is denied, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

### ON MOTION FOR REARGUMENT.

#### FEBRUARY 8, 1963.

PER CURIAM.   After our decision in the above cause was filed, the respondent Wayne C. Allinson was granted permission to present a motion for reargument. Pursuant thereto he has filed such a motion setting forth therein the particular reasons on which he bases his contention that justice requires a reargument of the cause.

We have carefully considered those reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Swan, Keeney & Jenckes, Harry W. Asquith, Henry M. Swan,* for appellant (respondent Wayne C. Allinson).

*Hinckley, Allen, Salisbury & Parsons, Jacques V. Hopkins,* for appellee (respondent Eileen W. Feehan).